UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTY SNOW,<br><br>    Plaintiff,<br><br>v.<br><br>ALIGN TECHNOLOGY INC,<br><br>    Defendant. | Case No. 23-mc-80055-VC (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 1, 27 |

We are here on Plaintiffs' motion to compel non-party OrthoFi to produce certain data that Plaintiffs would like to use in the underlying action *Snow v. Align Technology, Inc*., No. 21-cv-3269, pending in this court. The Court held hearings on May 4, 2023, and June 1, 2023, and now issues this order.

By way of background, OrthoFi provides software to dental practices that performs various financial transactions, such as patient billing, collections and insurance processing. Among other things, OrthoFi's software provides a patient interface and payment system for orthodontic treatments, such as Invisalign. OrthoFi collects payments directly from both patients and insurance companies and remits those payments to dental practices. OrthoFi also provides patient financing, collections, and insurance claims management services to practices. OrthoFi therefore has many thousands of data points showing what the individual dental practices charged patients for orthodontic treatment, including Invisalign.

Plaintiffs say this data is helpful to their experts' ability to analyze and measure "passthrough" or the extent to which changes in the price Align charges dentists for clear aligners are then passed on to end user customers in the form of higher Invisalign prices. Plaintiffs served a subpoena on OrthoFi on August 3, 2022 seeking transaction-level data for each sale of clear

dental aligners OrthoFi financed from May 4, 2017 to the present, including the identity of the dentist's office through which each sale was facilitated. After months of negotiations, OrthoFi produced two things. First, it produced a transactional dataset containing approximately 8.5 million data points, including what the treatment was (e.g., braces, aligners, brackets), estimated insurance benefits, patient payment responsibility, down payments, and total cost of treatment. In this dataset, the dentist/practice providing each treatment is identified only by a "Practice ID," a number made up by OrthoFi in place of the dentist/practice's name. Second, OrthoFi produced a spreadsheet listing its dental practice customers by name and by zip code.

Plaintiffs filed the present motion to compel seeking data sufficient to match OrthoFi's Practice IDs with those practices' zip codes. Here we need to pause for a moment because things get a little complicated. You might have thought that Plaintiffs would ask for a translation between Practice IDs and the names of the dental practices. From the motion to compel, it seems like that is what Plaintiffs originally wanted, but in an effort to accommodate OrthoFi's confidentiality concerns, Plaintiffs stated they would accept a matching of Practice IDs with zip codes because that would provide a reasonable basis for matching practice names to practice IDs. ECF No. 1 at 10. In other words, OrthoFi wouldn't need to explicitly list each of its dental practice customers by name in a way that revealed each practice's pricing. But Plaintiffs would be able to figure that out. At the May 4, 2023 hearing Plaintiffs explained that Align has produced its transactional data showing sales to dental practices by name and zip code. Plaintiffs thought that by using order volumes and zip codes, they could make a good guess about which dental practice corresponds to each Practice ID. Thus, while on the surface it might seem like Plaintiffs are not seeking confidential information – "You don't have to tell us the prices each of your dental customers charges its customers; just give us the zip code" – in fact, that is the very information Plaintiffs think they can figure out from the zip codes. And this compromise proposal failed to satisfy OrthoFi for this very reason, among others.

At the May 4 hearing the Court requested supplemental briefing concerning the propriety of subpoenaing a software provider for its customers' data that happens to be in the software provider's possession only by virtue of the services it provides. The parties provided that briefing,

2

ECF No. 27, which was helpful. Following that submission, the Court issued a tentative order denying the motion to compel. The tentative order expressed the view that the name of the dental practice that corresponds each Practice ID was irrelevant, in view of Plaintiffs' need to extrapolate from OrthoFi's customers anyway.

At the June 1 hearing, Plaintiffs offered a new theory of relevance. They assert that through data produced by Align at the wholesale level and the anonymized data produced by OrthoFi at the retail level, Plaintiffs' experts have been able to show a relationship between order volume and pricing. However, Plaintiffs say that Align has criticized their model based on retail price variations that can't be explained by volume.[1] Plaintiffs strongly suspect that these variations are due to geography – for example, that prices in big, expensive cities like New York are higher than in rural areas. Plaintiffs argue that telling them the zip codes associated with each Practice ID would materially advance their experts' analysis. Plaintiffs also assert that there are no other useful sources retail-level pricing that would give them this information.

This is a new theory of relevance, and it seems like a good one. It is an interesting change of plans from using zip codes as a way of guessing the dental practice's name to using zip codes as zip codes. It doesn't solve the problem that Plaintiffs and likely Align could guess the name of the dental practice associated with each Practice ID in the same way that Plaintiffs had planned to before, so it doesn't alter OrthoFi's confidentiality concerns. However, this new theory of relevance does overcome the Court's concern in the tentative ruling that the requested information was not relevant.

Of course, mere relevance isn't good enough. Plaintiffs are seeking "confidential . . . commercial information" within the meaning of Federal Rule of Civil Procedure 45(d)(3)(B)(i) because the information they would obtain would allow them to determine the prices charged by each of OrthoFi's customers. Therefore, Plaintiffs must "show a substantial need for the . . . material that cannot otherwise be met without undue hardship," and the Court must "ensure[] that the subpoenaed person will be reasonably compensated." *Id*. (d)(3)(C).

---

[1] The Court has not seen the parties' expert reports and is relying on Plaintiffs' counsel's description of the contested issues.

3

1  Plaintiffs have shown a substantial need for the material because it is necessary for their
2  experts' analysis.  They argue that Align has criticized their model for the inability to explain
3  retail price variances that can't be explained by order volume.  Plaintiffs make a logical argument
4  that prices likely differ by location, and the zip codes would allow them to show that.  Further,
5  having zip codes for OrthoFi's customers would provide a perfect line up with the pricing data
6  OrthoFi has produced – as opposed to using some other type of data concerning variations in retail
7  pricing because then it would be unclear if that other data actually explained the price variations in
8  OrthoFi's customers' pricing data.  Further, Plaintiffs insist there is no other source for this type of
9  retail pricing data for Invisalign.  In this proposed class action, Plaintiffs likely need to
10  demonstrate classwide injury, and their analysis of the alleged retail passthrough is important
11  toward that end.  Even if fact discovery were still open on the monopolization claim, which it is
12  not, subpoenaing OrthoFi's hundreds of customers would be an undue burden.

13  The Court believes that OrthoFi will be reasonably compensated.  Plaintiffs have agreed to
14  pay OrthoFi $10,000 for subpoena compliance, which is the only specific amount of money
15  OrthoFi has requested.  ECF No. 1 at 15.  OrthoFi states that its contracts provide that "[r]eceiving
16  Party may disclose the Disclosing Party's Confidential Information in response to a valid order by
17  a court or other governmental body, or as otherwise required by law; provided, however, that the
18  Receiving Party provides the Disclosing Party prompt notice of such order or requirement and a
19  reasonable opportunity, if permitted by law, to object to such disclosure and seek a protective
20  order."  ECF No. 9-1 ¶ 8.  And OrthoFi contends that providing its customers with the required
21  notice would be disruptive.  *Id*. ¶ 10.  However, OrthoFi has never quantified the burden of
22  providing that notice or even really explained what is involved in such a notification.

23  The Court must also balance the non-parties' competing concerns.  OrthoFi's legitimate
24  concern is the potential harm to its customer relationships from its customers learning that OrthoFi
25  was required to disclose their pricing information in a way that the receiving parties could link to
26  the specific customers.  This concern is real but it is also difficult to weigh or quantify.  For
27  example, even though the Court assumes that OrthoFi's customers' retail prices are confidential
28  commercial information, it is not clear to what extent the dental practices themselves think that.

4

1    Retail prices are by definition charged to the public, so they're never really secret. Assuming that
2    market forces operate in dentistry as elsewhere, dental practices probably know what their nearby
3    competitors are charging – otherwise, how do you set your prices? – and may assume their
4    competitors know their pricing as well. This suggests that OrthoFi's fears of a negative customer
5    reaction may be overstated.

6    The other affected non-parties are the dental practices themselves. As noted above, it's
7    unclear how confidential they regard their retail prices. Further, there is a protective order in the
8    underlying action, which Plaintiffs included with the motion to compel. ECF No. 1-6. It allows a
9    non-party like OrthoFi to designate information confidential or highly confidential, and it limits
10   the use of protected material to prosecuting, defending, or attempting to settle this litigation. This
11   should be adequate to protect OrthoFi's customers' retail pricing information from being used for
12   any purpose that would adversely affect them. Further, the Court will give them an additional
13   opportunity to object if they believe the existing protective order is for some reason insufficient.

14   Accordingly, weighing all of these factors, the Court concludes that Plaintiffs' motion to
15   compel should be and is now **GRANTED**. Within ten days of the date of this order, any OrthoFi
16   customer may file a motion for a protective order setting forth any reasons why the zip code or zip
17   codes associated with its Practice ID should not be provided to Plaintiffs. On the eleventh day
18   after the date of this order, OrthoFi shall provide this information to Plaintiffs for all customers
19   who have not moved for a protective order. OrthoFi shall designate this information highly
20   confidential within the terms of the protective order in the underlying *Snow* action.

21   **IT IS SO ORDERED.**

23   Dated: June 5, 2023

_____
THOMAS S. HIXSON
United States Magistrate Judge